## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| SHENZHEN SHENLAIYIBI INTELLIGENT TECHNOLOGY CO., LTD. and YI WU SHI ZHAO EN TI YU YONG PIN YOU XIAN GONG SI d/b/a FED Fitness, <br> Plaintiffs, <br><br> v. <br><br> SHENZHENSHIHAOQINGWANGLUOKEJIYOUXI ANGONGSI d/b/a UNNMIIY FITNESS, SHENZHENSHIXINJUNLONGKEJIYOUXIANGON GSI d/b/a US-UNNMIIY,   and HANGZHOUZIKEDIANZISHANGWU CO., LTD. d/b/a BRANDONSUPER <br><br> Defendants. | Civil Action No. 4:25-cv-01007 <br><br> Judge Mazzant |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, TO EXTEND THE TEMPORARY RESTRAINING ORDER AND CONTINUE THE PRELIMINARY INJUNCTION HEARING

# **Table of Contents**

I.INTRODUCTION ..................................................................................5

II. PROCEDURAL HISTORY ..................................................................6

III. LEGAL STANDARD .........................................................................7

IV. ARGUMENT ....................................................................................7

    A. Plaintiffs Are Likely to Succeed on the Merits of Their Trade Dress Claim......7

    B. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Injunctive Relief ...........................................................15

    C. The Balancing of Harms Tips in Plaintiffs' Favor, and the Public Interest Is Served by Entry of the Injunction.......................................................................18

    D. Request to Extend the Temporary Restraining Order and Continue the Hearing ....................................................................................................................20

V. CONCLUSION ..................................................................................21

# Table of Authorities

**CASES**

Acumed LLC v. Stryker Corp.,
    551 F.3d 1323, 1328 (Fed. Cir. 2008) ................................................................... 15

ADT, LLC v. Capital Connect, Inc.,
    145 F. Supp. 3d 671, 696 (N.D. Tex. 2015). .......................................................... 16

Amazing Spaces, Inc. v. Metro Mini Storage,
    608 F.3d 225, 248 (5th Cir. 2010). ........................................................................ 10

Amazing Spaces, Inc. v. Metro Mini Storage,
    No. 09-20702, slip op. at 24–25 (5th Cir. June 2, 2010). ....................................... 10

Apple Inc. v. Samsung Elecs. Co.,
    735 F.3d 1352, 1364 (Fed. Cir. 2013) ................................................................... 15

Beatriz Ball, LLC v. Barbagallo Co. LLC,
    40 F.4th 308, 317 (5th Cir. 2022). ..................................................................... 6, 7

Bushnell, Inc. v. Brunton Co.,
    673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) .......................................................... 17

Celsis in Vitro, Inc. v. CellzDirect, Inc.,
    664 F.3d 922, 930 (Fed. Cir. 2012) ....................................................................... 15

Celsis in Vitro, Inc. v. CellzDirect, Inc.,
    664 F.3d 922, 931 (Fed. Cir. 2012) ....................................................................... 17

Cole's Wild Bird Products Co. v. Red Bird Enterprises, Inc.,
    No. 5:22-cv-955-FB (W.D. Tex. Feb. 6, 2025) ........................................................ 9

Douglas Dynamics, LLC v. Buyers Prods. Co.,
    717 F.3d 1336, 1345 (Fed. Cir. 2013) ................................................................... 15

Eppendorf–Netheler–Hinz GMBH v. Ritter GMBH,
    289 F.3d 351, 354–55 (5th Cir.2002). ..................................................................... 7

Genband US LLC v. Metaswitch Networks Corp.,
    861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017) .............................................................. 15

Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.,
    814 F.3d 1343, 1352 (Fed. Cir. 2016) ................................................................... 14

Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.,
    166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ........................................................... 17

PCT Int'l Inc. v. Holland Elecs. LLC,
    No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23–24 (D. Ariz. Sept. 8,
    2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ............ 15

Pfizer, Inc. v. Teva Pharms. USA, Inc.,
    429 F.3d 1364, 1382 (Fed. Cir. 2005) ................................................................... 18

Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,
   702 F.3d 1351, 1354 (Fed. Cir. 2012) .......................................................15

Ramada Franchise Sys. v. Jacobcart, Inc.,
   2001 LEXIS 6650, at *3 (N.D. Tex. May 17, 2001) .................................16

Reebok Int'l Ltd. v. J. Baker, Inc.,
   32 F.3d 1552, 1558 (Fed. Cir. 1994) .......................................................15

Robert Bosch LLC v. Pylon Manufacturing Corp.,
   659 F.3d 1142, 1148 (Fed. Cir. 2011) .....................................................14

Aevoe Corp. v. AE Tech Co., Ltd.,
   2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ......................................17

Sanofi-Synthelabo, Inc. v. Apotex, Inc.,
   470 F.3d 1368, 1383 (Fed. Cir. 2006) .....................................................18

Sparrow Bars & Events v. Ruth Farm, Inc.,
   2019 LEXIS 61515 at *13. .......................................................................17

TrafFix Devices, Inc. v. Mktg. Displays, Inc.,
   532 U.S. 23, 28–29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001); .................7

TGI Friday's, Inc.,
   652 F. Supp. 2d at 772 .............................................................................16

Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.,
   83 F. Supp. 2d 810, 831 (S.D. Tex. 1999). .............................................16

Two Pesos, Inc. v. Taco Cabana, Inc.,
   505 U.S. 763, 764 n.1 (1992). ....................................................................7

UATP IP, LLC v. Kangaroo, LLC
   (S.D. Tex. No. 4:21-cv-02478, aff'd 5th Cir. Feb. 16, 2024),................13

Wal-Mart Stores, Inc. v. Samara Bros., Inc.,
   529 U.S. 205, 210–11 (2000). ...............................................................7, 8

Winter v. Nat. Res. Def. Council, Inc.,
   555 U.S. 7, 20 (2008); ...........................................................................6, 14

## I.INTRODUCTION

Plaintiffs Shenzhen Shenlaiyibi Intelligent Technology Co., Ltd. and Yi Wu Shi Zhao En Ti Yu Yong Pin You Xian Gong Si d/b/a FED Fitness ("Plaintiffs") respectfully move to convert the Temporary Restraining Order ("TRO") (Dkt. No. 7) entered on September 24, 2025, into a preliminary injunction ("PI").

As demonstrated in Plaintiffs' TRO motion (Dkt. No. 5), Defendants are actively infringing upon Plaintiffs' distinctive FED Fitness trade dress. As set forth in Plaintiffs' Complaint, Defendants, in violation of the Lanham Act, are making, using, selling, offering for sale, and importing into the United States products that imitate FED Fitness's trade dress ("Infringing Products"). These actions directly violate Plaintiffs' exclusive rights, causing immediate and irreparable harm to Plaintiffs' business.

The Court's TRO temporarily enjoined Defendants from their infringing conduct and ordered the restraint of assets to prevent dissipation. Plaintiffs have diligently complied with the TRO by serving subpoenas on Amazon.com, Inc., Amazon.com Services LLC, Amazon Payments, Inc., and Temu for expedited discovery. All three Defendants have now appeared in this action through counsel, and the infringing listings have been removed from the online marketplaces pursuant to the Court's Order.

Nevertheless, Plaintiffs continue to suffer ongoing harm to their goodwill and brand reputation due to the confusion and marketplace disruption already caused by Defendants' prior sales.

Plaintiffs have invested substantial time, money, and resources into developing, advertising, and selling products covered by the FED Fitness's trade dress under the well-known FED Fitness brand. These distinctive trade dress have become recognizable to consumers and are central to FED Fitness's innovative strategy,

reinforcing its reputation in the fitness equipment market. Defendants' unauthorized activities continue to place that reputation and goodwill at immediate and ongoing risk.

Absent injunctive relief for the duration of the Plaintiffs' trade dress rights, Defendants will continue to sell Infringing Products and are likely to move revenues beyond the jurisdiction of this Court, impeding Plaintiffs' ability to obtain monetary relief and exacerbating the irreparable harm to Plaintiffs' goodwill and market position.

For these reasons, Plaintiffs respectfully request that this Court convert the TRO into a preliminary injunction.

Plaintiffs also respectfully request that the Court extend the Temporary Restraining Order for fourteen (14) days to ensure continuous protection pending the Court's ruling and, if necessary, continue the hearing accordingly.

## II. PROCEDURAL HISTORY

Plaintiffs filed this action against Defendants Shenzhen Shi Haoqing Wangluo Keji Youxian Gongsi d/b/a UNNMIIY FITNESS, Shenzhen Shi Xin Junlong Keji Youxian Gongsi d/b/a US-UNNMIIY, and Hangzhou Zikedianzishangwu Co., Ltd. d/b/a BRANDONSUPER on September 15, 2025. Dkt. No. 1.

On September 22, 2025, Plaintiffs filed their motion for a temporary restraining order, expedited discovery, and alternative service. Dkt. No. 5. On September 24, 2025, the Court granted Plaintiffs' motion and entered a Temporary Restraining Order ("TRO"), effective for fourteen (14) days, through October 8, 2025, at 2:07 p.m. Dkt. No. 7. The TRO required Plaintiffs to post a $4,000 bond and set a preliminary injunction hearing for October 8, 2025, at 1:30 p.m. in Courtroom 208 before Chief District Judge Amos L. Mazzant. *Id*.

Since entry of the TRO, all three Defendants have appeared in this action through counsel. Dkt. Nos. 8–9. Plaintiffs promptly served the TRO on Defendants in

accordance with the Court's Order, ensuring timely notice. In addition, Plaintiffs have served subpoenas on Amazon.com, Inc., Amazon.com Services LLC, and Amazon Payments, Inc. pursuant to the Court's authorization for expedited discovery, with a compliance deadline of October 9, 2025.

On October 2, 2025, because Defendants filed an opposition to the TRO together with certain substantive evidence, and given that Plaintiffs are located in China and were on their National Day holiday from October 1 through October 8, good cause exists for an extension. Accordingly, Plaintiffs' counsel respectfully requests a 14-day extension of the TRO and the hearing in order to further confer with Plaintiffs, verify the evidence, and prepare a motion for preliminary injunction. *See* Dkt. 12.

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that may issue only when the movant clearly establishes:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable harm if the injunction is not granted;

(3) that the threatened injury outweighs any harm the injunction may cause the nonmovant; and

(4) that the injunction will not disserve the public interest.

See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Beatriz Ball, LLC v. Barbagallo Co. LLC*, 40 F.4th 308, 317 (5th Cir. 2022).

## IV. ARGUMENT

### A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR TRADE DRESS CLAIM

### 1. Plaintiffs' Trade Dress Qualifies for Protection

In a trade dress infringement case, to show a likelihood of success on the merits, a plaintiff must prove:

(1) that its trade dress qualifies for protection—meaning it is (a) non-functional and (b) distinctive, either inherently or through acquired secondary meaning—and

(2) that the defendant's use of its own design is likely to cause confusion among potential consumers. Id.; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210–11 (2000).

An unregistered trade dress may be protectable under section 43(a) of the Lanham Act if the trade dress is distinctive and nonfunctional. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23, 28–29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001); *Eppendorf–Netheler–Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354–55 (5th Cir.2002).

### (a) The Trade Dress Is Non-Functional

Trade dress protection extends to "the total image and overall appearance of a product," including its "size, shape, color or color combinations, textures, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992).

Plaintiffs' trade dress consists of the main product image used on e-commerce platforms, which operates much like promotional packaging designed to attract consumer attention, generate clicks, and convert interest into sales, and serves the additional function of uniquely identifying the source—consumers often recognize the product as Plaintiffs' based on the main image alone. This image reflects distinctive product selection, unique arrangement, and the deliberate display of weights, creating a striking and recognizable visual impression. These features are aesthetic and source-identifying in nature; they bear no relation to product performance or utility.

Accordingly, the trade dress satisfies the non-functionality requirement. *Beatriz Ball*, 40 F.4th at 317.



*Plaintiff's asserted trade dress—the promotional main product image used on e-commerce platforms*

*See Dkt. 1-5, Exhibit E.*

### (b) The Trade Dress Is Distinctive

### (i) Inherent Distinctiveness

The Supreme Court in *Two Pesos* held that inherently distinctive trade dress is protectable without proof of secondary meaning. *Id.* at 769.

As reaffirmed in *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–14 (2000), product **packaging** may be inherently distinctive because its "intrinsic nature serves to identify a particular source of a product."

Here, the trade dress asserted by Plaintiffs serves a role similar to product packaging, presenting FED Fitness products in a unified and visually distinctive layout

that immediately conveys their source to consumers. The trade dress consists of a "five-in-one" arrangement displaying the dumbbells, connector bar, and push-up handles harmoniously positioned against a white background. The dark dumbbell bodies, paired with warm-colored handle grips, together with balanced geometric proportions that emphasize the product's core components, create a cohesive and recognizable visual identity. This design distinguishes FED Fitness products from ordinary industrial dumbbells and does not enhance function or reduce manufacturing cost; its sole purpose is to identify the brand's source.

Plaintiffs completed the design of the trade dress in December 2021 and have continuously used it on Amazon and other platforms since January 2022. See Dkt. 1-5, Exhibit E.

Due to the Chinese National Day holiday from October 1 through October 8, 2025, the personnel of the Plaintiff companies were on nationwide leave and could not be reached for execution of the further supporting declaration and evidence exhibits. Plaintiffs will promptly supplement the record with the executed declaration and other relevant evidence upon resumption of business operations in China. *See* Declaration of Hongchang Deng ¶¶ 3-4.

Under *Two Pesos*, such a visual presentation that departs from common designs and instantly identifies a source is inherently distinctive.

Recent district court decisions in Texas have reaffirmed that product packaging and similar visual presentations can be inherently distinctive under *Wal-Mart and Two Pesos*. *See Cole's Wild Bird Products Co. v. Red Bird Enterprises, Inc.*, No. 5:22-cv-955-FB (W.D. Tex. Feb. 6, 2025) (R.&R.) (finding "a product's packaging … almost automatically tells a customer that it refers to a brand and signals a product source," and holding that a squirrel-design package was inherently distinctive).

**(ii) Acquired Distinctiveness**

Even apart from the inherent distinctiveness of this trade dress, it has acquired secondary meaning through continuous use and recognition in the marketplace.

Secondary meaning arises when "in the minds of the public, the primary significance of a trade dress is to identify the source rather than the product itself." *Amazing Spaces, Inc. v. Metro Mini Storage*, No. 09-20702, slip op. at 24–25 (5th Cir. June 2, 2010).

When determining whether trade dress has acquired secondary meaning, courts consider the following factors: "(1) the length and manner of use of the mark or trade dress; (2) the volume of sales; (3) the amount and manner of advertising; (4) the nature of use of the mark or trade dress in newspapers or magazines; (5) consumer-survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the trade dress." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010). Each factor supports a finding that Plaintiffs' trade dress has acquired secondary meaning.

(1) Length and manner of use.

Plaintiffs completed the design of the asserted trade dress in December 2021 and have continuously and exclusively used it on Amazon and other e-commerce platforms since January 2022. *See* Dkt. 1-5, Exhibit E. Before Plaintiffs' adoption, no similar product images or arrangements appeared in the marketplace. This consistent and exclusive use over nearly four years has firmly associated the trade dress with Plaintiffs in the minds of consumers.

(2) Volume of sales.

Since adopting the trade dress, Plaintiffs have achieved significant sales growth, with total revenues exceeding $20 million between 2022 and September 2025. Annual sales have steadily increased, demonstrating strong marketplace recognition tied to the trade dress presentation. This level of commercial success is strong evidence of secondary meaning.

(3) Amount and manner of advertising.

Plaintiffs have invested heavily and continuously in advertising featuring the trade dress on Amazon and other platforms. From 2022 to the present, Plaintiffs have spent more than $1.3 million on Amazon-sponsored ads and related promotional campaigns, consistently displaying the trade dress image as the centerpiece of advertising. This sustained advertising investment further reinforces consumer association between the trade dress and Plaintiffs.

(4) Nature of use in newspapers or magazines.

Although Plaintiffs' products are primarily marketed online rather than through traditional print media, the trade dress has received substantial exposure on e-commerce listings, third-party product review sites, and consumer-generated content on social platforms. *See* Exhibit 1. This widespread online presence functions as the digital equivalent of traditional media coverage, further establishing the trade dress as an identifier of source.

(5) Consumer-survey evidence & (6) direct consumer testimony.

While formal consumer survey evidence has not yet been submitted, Plaintiffs intend to supplement the record following the Chinese National Holiday. In the

meantime, ample evidence exists that consumers directly recognize the trade dress as identifying Plaintiffs' products. Thousands of customers on Amazon, TikTok, Facebook, and other social platforms have used the trade dress image to review, share, and discuss Plaintiffs' products. *See* Exhibit 1. The product has received over 3,900 reviews on Amazon with an average rating of 4.5 out of 5 stars, reflecting broad recognition and consumer goodwill. *See* Dkt. 1-5, Exhibit E.

(7) Defendant's intent in copying.

Finally, Defendants' deliberate copying of Plaintiffs' trade dress strongly supports a finding of secondary meaning. During his employment with Plaintiff Shenlaiyibi, Junhuang Xia had direct access to Plaintiffs' confidential supplier information, product designs, and market strategies, and he executed a binding Confidentiality and Non-Competition Agreement prohibiting him from disclosing such information or engaging in competing business for two years after termination. Yet, less than two months after his termination, Xia founded Defendant US-UNNMIIY, a cross-border e-commerce company selling dumbbells, barbells, and kettlebells in direct competition with Plaintiffs.

In launching this competing business, Defendants mimicked Plaintiffs' distinctive trade dress—replicating the same product selection, arrangement, and visual presentation that Plaintiffs had consistently used to identify their brand. Such deliberate copying was willful and calculated to exploit the goodwill and recognition Plaintiffs had developed through years of continuous sales and substantial advertising. Courts have long recognized that intentional imitation is persuasive evidence that a trade dress has acquired secondary meaning, because copying indicates that consumers already

associate the dress with a particular source. Defendants' conduct here confirms that Plaintiffs' trade dress serves precisely that source-identifying function.

In sum, even apart from its inherent distinctiveness, Plaintiffs' trade dress has acquired secondary meaning through years of exclusive use, substantial sales, extensive advertising, consumer recognition, and Defendants' deliberate copying. The evidence overwhelmingly supports protectability under the Lanham Act.

### 2. Defendants' Use Creates a Likelihood of Confusion

To establish infringement, a plaintiff must show "a likelihood of confusion in the minds of potential consumers." *Beatriz Ball*, 40 F.4th at 317.

In *UATP IP, LLC v. Kangaroo, LLC* (S.D. Tex. No. 4:21-cv-02478, aff'd 5th Cir. Feb. 16, 2024), the court recognized that copying an established trade dress in the same commercial environment, where consumers encounter the goods visually, creates a strong presumption of confusion.

Here, Defendants' Amazon listings replicate nearly every defining element of Plaintiffs' distinctive trade dress. Both configurations display the same stacked circular weight plates and adopt the identical five-in-one layout featuring the dumbbells, connector bar, and push-up handles in precisely the same arrangement and perspective. Even the product titles and image compositions mirror one another, presenting the components against a white background with the same orientation and spacing.



| **Exemplary Image of Defendants' Product Configuration** | **Exemplary Image of FED Fitness's Product Configuration** |
|---|---|
| | |

Because consumers on Amazon rely heavily on visual cues—particularly the main product image—to differentiate among competing products, the overall appearance of Defendants' listings is virtually indistinguishable from Plaintiffs'. An ordinary online purchaser, viewing the side-by-side images, would reasonably believe that Defendants' products originate from, are licensed by, or are otherwise affiliated with FED Fitness. This near-identity in configuration, color scheme, and presentation is precisely the type of visual copying that establishes a likelihood of confusion under *UATP IP* and *Beatriz Ball*.

## B. THERE IS NO ADEQUATE REMEDY AT LAW, AND PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF

Irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). A plaintiff need only show that irreparable harm is likely in order for an injunction to issue. See, e.g., *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Here, in the absence of an injunction, Plaintiffs will suffer irreparable harm due to loss of goodwill and reputation, price erosion, and loss of control over intellectual property rights. This threat is particularly acute because Defendants are direct competitors, selling Infringing Products on the same e-commerce platforms—Amazon and TEMU—where Plaintiffs sell their authentic goods. See Dkt. 5, YuYe Decl. at ¶¶ 13-17. Such injury is grounds for injunctive relief. See, e.g., *Celsis in Vitro, Inc. v.*

*CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1354 (Fed. Cir. 2012).

Defendants' infringement of the FED Fitness's trade dress is also likely to cause customer confusion, resulting in reputational harm and the erosion of customer goodwill. The Federal Circuit has made clear that "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994).

A causal nexus exists between Defendants' infringement and each of the irreparable harms Plaintiffs are suffering. See *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of Plaintiffs' trade dress-protected designs is a substantial, if not exclusive, driver of consumer demand for the Infringing Products. See *PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23 – 24 (D. Ariz. Sept. 8, 2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016). In fact, "[t]he causal-nexus inquiry may have little work to do in an injunction analysis when the infringing product contains no feature relevant to consumers' purchasing decisions other than what the patent claims. In such a case, causal nexus and consumer demand may be apparent from the simple fact of infringing sales." *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017).

While Plaintiffs spent years developing their intellectual property and distinctive Trade Dress and cultivating goodwill in the marketplace, it takes only moments for that goodwill to be damaged. On e-commerce platforms such as Amazon, consumers rely heavily on the main product image to identify the source of goods. If a consumer purchases Defendants' products believing them to be Plaintiffs' because of the confusingly similar Trade Dress, and has a poor experience, Plaintiffs may lose that customer permanently.

Even if Defendants were to cease their infringing conduct, Plaintiffs may never fully regain the trust and confidence of consumers who were already misled by Defendants' unauthorized copying of Plaintiffs' Trade Dress. See *Ramada Franchise Sys. v. Jacobcart, Inc.*, 2001 LEXIS 6650, at *3 (N.D. Tex. May 17, 2001) ("[a] bad experience at one location of what is supposed to be a relatively uniform chain may influence the customer to view the entire franchise poorly.").

When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable injury, regardless of the actual quality of those goods. *TGI Friday's, Inc.*, 652 F. Supp. 2d at 772; *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999). Because Plaintiffs cannot control Defendants' use of Plaintiffs' Trade Dress, they are powerless to protect the reputation and market position of FED Fitness without an injunction. See *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 696 (N.D. Tex. 2015).

Given the near-identical copying of Plaintiffs' e-commerce Trade Dress in Defendants' Amazon listings, the evidence of actual consumer confusion, and Defendants' deliberate infringement, Plaintiffs have inevitably lost control over their goodwill. However that loss manifests itself—through diminished reputation, loss of

customer loyalty, or weakened market presence—it constitutes irreparable harm that cannot be adequately remedied by monetary damages. See *Sparrow Bars & Events v. Ruth Farm, Inc.*, 2019 LEXIS 61515 at *13.

Further, because Defendants are foreign entities based in China with no presence in the United States, any monetary judgment is likely uncollectable. See *Robert Bosch*, 659 F.3d at 1156; *Aevoe Corp. v. AE Tech Co., Ltd.*, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016). The prospect of collecting money damages from Defendants with no U.S. assets strongly favors a finding of irreparable harm.

For the reasons stated above, Plaintiffs will suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued in accordance with Rule 65(a). See Dkt.5, YuYe Decl. at ¶¶ 13-17.

## C. THE BALANCING OF HARMS TIPS IN PLAINTIFFS' FAVOR, AND THE PUBLIC INTEREST IS SERVED BY ENTRY OF THE INJUNCTION

As willful infringers, Defendants are entitled to little equitable consideration because any harm to them resulting from a temporary restraint is self-inflicted. Defendants undertook a calculated risk when they engaged in infringement of the FED Fitness's trade dress. Courts refuse to assign weight to such "harm" because it is the direct result of a defendant's decision to infringe. See *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

Defendants willfully engaged in infringing conduct without authorization from Plaintiffs. Courts consistently hold that an alleged infringer, having knowledge of a intellectual property right prior to attempting to sell its infringing product, assumes a calculated risk and cannot credibly argue that the balance of hardships weighs in its favor. See, e.g., *Sanofi-Synthelabo, Inc. v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (concluding that harms suffered by defendant were almost entirely preventable and were the result of its "own decision to engage in an at-risk launch"); *Pfizer, Inc. v. Teva Pharms. USA, Inc*., 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("Simply put, an alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct.").

Moreover, Defendants are foreign entities who have profited through the sale of Infringing Products that infringe upon FED Fitness's trade dress. It is virtually certain that if Defendants become aware of this action before the requested relief is granted, they will swiftly transfer all funds from their Amazon or other platform accounts, thereby disrupting the status quo and depriving Plaintiffs of the ability to collect on any judgment.

Also, Defendants and their storefronts frequently appear, disappear, reappear, and change names on Third-Party Providers' platforms. For example, during the preparation of the complaint, certain accused ASINs were taken down, while others changed the displayed seller from UNNMIIY FITNESS to US-UNNMIIY or vice versa.

See Dkt.5, YuYe Decl. at ¶ 7. Without immediate injunctive relief, Defendants may disappear upon notice of this case, only to reemerge under new identities.

As a result, the balance of equities weighs strongly in favor of granting a temporary restraining order and preliminary injunction. Further, Plaintiffs are prepared to post a bond to compensate any temporary inconvenience to Defendants in the unlikely event one or more of them is later found not to infringe the or trade dress.

## D. REQUEST TO EXTEND THE TEMPORARY RESTRAINING ORDER AND CONTINUE THE HEARING

Pursuant to Federal Rule of Civil Procedure 65(b)(2), Plaintiffs respectfully request that the Temporary Restraining Order (Dkt. No. 7) be extended for fourteen (14) days, through October 22, 2025, to preserve the status quo and prevent interruption of the Court's prior relief.

Plaintiffs further request that, if the Court deems it appropriate for scheduling or record-completeness purposes, the Preliminary Injunction hearing currently set for October 8, 2025, be continued to October 22, 2025, at 1:30 p.m., or to another date convenient for the Court.

Good cause exists for these requests. The TRO has been fully implemented, and all infringing listings have been removed from Amazon and Temu, demonstrating Plaintiffs' diligent compliance and the effectiveness of the Court's order. However, due to the Chinese National Day holiday from October 1 through October 8, 2025, Plaintiffs' personnel in China are temporarily unavailable to execute supplemental declarations and provide additional materials necessary for the hearing. See Declaration of Hongchang Deng ¶¶ 2–3.

A brief fourteen-day extension of both the TRO and hearing will allow Plaintiffs to submit executed declarations and any pending third-party discovery responses while maintaining the existing injunctive protection and avoiding prejudice to any party.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their trade dress infringement claim, have shown that they will suffer irreparable harm absent continued injunctive relief, and that the balance of equities and public interest strongly favor maintaining the protections currently in place.

Accordingly, Plaintiffs respectfully request that this Court:

1. Convert the Temporary Restraining Order (Dkt. No. 7) into a Preliminary Injunction; or, in the alternative:

2. Extend the Temporary Restraining Order for fourteen (14) days, through October 22, 2025, to ensure uninterrupted protection while the Court considers this Motion and completes the record; and

3. Continue the Preliminary Injunction hearing for fourteen (14) days, until October 22, 2025, at 1:30 p.m., or to such other date as the Court may find convenient, to allow Plaintiffs to file executed declarations, supplemental exhibits, and responses from the expedited third-party discovery previously authorized by the Court.

Plaintiffs make these requests in good faith and solely to ensure a complete evidentiary record for the Court's consideration. Plaintiffs further request such other and further relief as the Court deems just and proper.

DATED:  October 8, 2025                    Respectfully submitted,

By:    */s/ Hongchang Deng*
       Hongchang Deng
       LEAD ATTORNEY
       California Bar No. 354529
       2108 N St., Ste.9124
       Sacramento, CA 95816
       M: +267 8888281
       Email:Rdeng@lawmayus.com

       Mingbo Ye
       LEAD ATTORNEY
       TX. Bar No. 24124835
       MY IP & TRUST LAW
       12603 Southwest Fwy Suite 210
       Stafford Texas 77477
       M: 832-755-5640
       Email: mye@myiptrustlaw.com

       *Attorneys for Plaintiffs Shenzhen*
       *Shenlaiyibi Intelligent Technology Co.,*
       *Ltd. and Yi Wu Shi Zhao En Ti Yu Yong*
       *Pin You Xian Gong Si d/b/a FED Fitness*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendants regarding the relief requested in this motion. No agreement could be reached, and the matter is submitted for determination by the Court.

/s/ Hongchang Deng
Hongchang Deng

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Hongchang Deng
Hongchang Deng